UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANE DOE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-CV-0329-B |
| | § | |
| NABIL ALAME, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Jane Doe's Motion for Default Judgment (Doc. 28). For the following reasons, the Court **GRANTS IN PART** the Motion.

### I.

### BACKGROUND

This case involves non-consensual disclosure of explicit sexual and intimate videos and images. Plaintiff Jane Doe and Defendant Nabil Alame began a romantic relationship in October 2022, while Doe was working at a restaurant co-owned and managed by Alame. Doc. 1, Compl., 4. With Doe's knowledge and consent, Alame took images and videos of Doe where she was naked and/or engaged in sexually explicit activities (the "explicit depictions") during their relationship. *Id.* But during these encounters Doe was often under the influence of drugs and/or alcohol. *Id.* For instance, during one encounter, while Doe was intoxicated, she agreed to Alame recording her, but was "unaware that [Alame] would force her to engage in a degrading act by consuming his urine." *Id.*

Doe did not consent to Alame's disclosure of the explicit depictions to third parties. *Id.* at 5.

Indeed, Doe asked Alame to delete the explicit depictions in his possession. *Id.* at 4. Alame told Doe he deleted the explicit depictions. *Id.* In support of her allegations, Doe submits to the record her sworn statement, which includes message screenshots between her and Alame. *See generally* Doc. 5-1, Doe Aff. For example, on October 30, 2023, Alame messages Doe an image and writes "no screenshot," and in response Doe tells Alame to delete the explicit depiction. *Id.* at 3, 8. Additionally, prior to November 5, 2023, Alame told Doe he would delete all of the explicit depictions. *Id.* at 3. Then, on November 5, 2023, he told Doe "I play games sometimes but by [n]ow you should know that if I say ima do something that[] means I'll do it" and "[w]hen you asked me to delete whatever was taken from my phone, that means I deleted it." *Id.* at 3, 10.

But Alame did not delete the explicit depictions or keep them private. In July 2024, Doe learned from the Tulsa Police Department that Alame had sent the explicit depictions to third parties from his phone five times—on November 21, 2022; December 3, 2022; January 16, 2023; February 22, 2024; and February 26, 2024. Doc. 1, Compl., 4-5. Several of the disclosures of the explicit depictions were made via "WhatsApp." Doc. 5-2, Hutcherson Aff., 2. According to Sergeant Ryan Ver Meer, Doe's face is visible in the explicit depictions Alame sent to third parties. *Id.* Additionally, one of the explicit depictions that was sent to a third party was the recording where Almae forced Doe, naked, to drink his urine. *Id.*

Police confiscated Alame's phone when he was arrested on April 11, 2024. Doc. 9-1, Second Hutcherson Aff., 2. After the charges were dismissed on September 30, 2024, he received his phone back, and he now has access to any sexually explicit depictions that are stored there. *Id.* at 2-3.

Doe has suffered emotional distress, recurring nightmares, crying episodes, and fear that people she encounters might have seen the images or videos. Doc. 1, Compl., 6. Additionally, Doe

stopped attending therapy sessions because discussing the events causes her emotional distress. *Id.*

Doe filed suit against Alame on February 10, 2025, for disclosing explicit depictions of her without her consent, in violation of the Violence Against Women Reauthorization Act ("VAWRA"), 15 U.S.C. § 6851(b); Texas Unlawful Disclosure of Intimate Visual Material ("UDIVM"), Texas Civil Practice and Remedies Code section 98B.001 *et seq.*; and the common law right to privacy. *Id.* at 7-10.

On February 24, 2025, this Court granted in part Doe's Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction. *See generally* Doc. 10, Mem. Op. & Order. On March 12, 2025, Doe served Alame. *See generally* Doc. 22, Proof of Service. The Court then ordered Alame to respond to Doe's Motion for Preliminary Injunction by April 2, 2025. Doc. 23, Order, 1. When Alame failed to file a response by the deadline, the Court ordered Alame to file an answer to Doe's complaint and a response to Doe's Motion for Preliminary Injunction by April 10, 2025. Doc. 24, Order, 1. To date, Alame has failed to file a response to any motion or otherwise appear in this case.

On April 4, 2025, the Clerk entered default as to Alame. Doc. 27, Entry Default, 1. On May 9, 2025, Doe filed her Motion for Default Judgment against Alame. *See generally* Doc. 28, Mot. Default J. The Court evaluates the motion below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for the entry of default judgments in federal court. Rule 55 states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." FED. R. CIV. P. 55(a). Once default has been entered, the Court may enter a default judgment against the defaulting

defendant upon motion by the plaintiff. FED. R. CIV. P. 55(b)(2). However, default judgments are a "drastic remedy" and thus are only used by courts in "extreme situations." *Sun Bank of Ocala v. Pelican Homest'd & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citations omitted). As such, a party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (citation omitted). A default judgment is rather "committed to the discretion of the district court." *United States v. 1998 Freightliner Vin # 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

To determine whether to enter default judgment against a defendant, courts in the Fifth Circuit employ a three-part analysis. First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). In doing so, courts assume that due to the defendant's default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* Third, courts determine what form of relief, if any, the plaintiff should receive. *See Ins. Co. of the W. v. H & G Contractors, Inc.*, No. CIV.A. C-10-390, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011). A court may determine damages without a hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (cleaned up).

### III.

### ANALYSIS

Applying the three-part analysis, the Court first concludes that a default judgment in this

case is procedurally warranted. Second, the Court determines there is a sufficient basis for entering default judgment on Doe's VAWRA claim. Third, the Court determines damages without a hearing because the amount claimed is a liquidated sum and capable of mathematical calculation.

A.      *Whether a Default Judgment is Procedurally Warranted*

The Court must first determine whether the entry of default judgment is procedurally warranted pursuant to the *Lindsey* factors. *See Lindsey*, 161 F.3d at 893. The factors are: (1) "whether material issues of fact exist"; (2) "whether there has been substantial prejudice"; (3) "whether the grounds for default are clearly established"; (4) "whether the default was caused by a good faith mistake or excusable neglect"; (5) "the harshness of a default judgment"; and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Id.* Here, each factor suggests that an entry of default judgment is procedurally warranted.

First, by defaulting, Alame "admits the plaintiff's well-pleaded allegations of fact[.]" *Nishimatsu*, 515 F.2d at 1206. Thus, no material facts here, as pleaded, are in dispute. *See Sanchez v. Maddies Mayhem, LLC*, No. 419CV00574SDJCAN, 2020 WL 4808604, at *3 (E.D. Tex. July 27, 2020), *report and recommendation adopted*, No. 4:19-CV-574, 2020 WL 4785046 (E.D. Tex. Aug. 18, 2020). Second, Alame's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Doe's] interests." *See H & G Contractors*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893) (other citation omitted). Third, the grounds for default are clearly established because no potential claimant has filed any responsive pleadings or otherwise participated in this case. *See* FED. R. CIV. P. 55(a). Fourth, there is no evidence before the Court indicating that Alame's silence is the result of a "good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. Fifth, default judgment would not be a harsh result, as Alame has completely failed

to respond to Doe's complaint or the Court's Orders. Sixth, the Court is not aware of any facts that would give rise to "good cause" to set aside the default. *See id.* In sum, after reviewing the *Lindsey* factors, the Court concludes that Doe has met the procedural requirements for default judgment.

B.      *Whether the Pleadings Contain a Sufficient Basis for Judgment*

Due to his default, Alame is deemed to have admitted the allegations set forth in Doe's complaint. Nonetheless, the Court must still review the pleadings to determine whether they present a sufficient basis for Doe's claims for relief. *See Nishimatsu*, 515 F.2d at 1206. In conducting this analysis, "the Fifth Circuit looks to the [Federal Rule of Civil Procedure 8] case law for guidance." *Morales v. Rausch Grp. & Assocs., LLC*, No. 3:19-CV-2850-B, 2020 WL 6583023, at *3 (N.D. Tex. Nov. 10, 2020) (Boyle, J.) (citation omitted). "Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (citation omitted). "The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (citation omitted). But "the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Additionally, evidence submitted to the record can support the allegations in the complaint. *Merchs. Bonding Co. (Mut.) v. Veteran Owned Servs. Grp., LLC*, No. 3:23-CV-324-E (BK), 2024 WL 1120996, at *3 (N.D. Tex. Feb. 28, 2024) (Toliver, Mag. J.) (citing *Wooten*, 788 F.3d at 500), *report and recommendation adopted*, No. 3:23-CV-324-E, 2024 WL 1122048 (N.D. Tex. Mar. 14, 2024) (Brown, J.).[1]

---

[1] In *Wooten*, the Fifth Circuit found the movant's testimony provided "factual details that fleshed out his claim," and in reviewing the evidence in conjunction with the allegations from the complaint, found there was a sufficient basis for default judgment. 788 F.3d at 498-500.

The Court reviews each of Doe's claims in turn to determine whether there is a sufficient basis for the Court to enter default judgment.

1. The VAWRA Claim

Doe first brings a claim under the VAWRA, which provides that:

[1] an individual whose intimate visual depiction [2] is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, [3] without the consent of the individual, [4] where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief.

15 U.S.C. § 6851(b)(1)(A). The Court finds there are sufficient allegations in the complaint, bolstered by the sworn statements of Doe and her attorney, Mr. Hutcherson, to support an entry of default judgment on the VAWRA claim. First, an intimate visual depiction is one that shows "the uncovered genitals . . . or post-pubescent female nipple of an identifiable individual," among other things. § 6851(a)(5)(A)(i). In the explicit depictions at issue here, Doe is naked and/or engaging in sexually explicit acts, and her face is visible. The explicit depictions therefore meet the statutory definition of intimate visual depiction. Second, Alame disclosed the explicit depictions through interstate commerce when he transmitted them via his phone. *See United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002) (citation omitted) (holding that the "transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce"); *Doe v. Serpa*, No. 3:25-CV-0057-X, 2025 WL 332555, at *2 (N.D. Tex. Jan. 29, 2025) (Starr, J.) (same); *United States v. Elkins*, 725 F. Supp. 3d 570, 574 (N.D. Tex. 2024) (Boyle, J.) ("The Fifth Circuit has recognized phones to be facilities of interstate commerce[.]"), *aff'd*, No. 24-10753, 2025 WL 3537272 (5th Cir. Dec. 10, 2025). Third, Doe did not consent to Alame's disclosure of the explicit depictions to third parties. Doc. 1, Compl., 5. Lastly,

while we do not have direct evidence of Alame's level of knowledge, Doe's complaint and supporting affidavits provide a sufficient basis to show Alame acted with at least a reckless disregard of Doe's non-consent when he disclosed the explicit depictions. Doe states in her affidavit that the explicit depictions were "created in the context of a private, consensual relationship with the understanding that the material would remain private." Doc. 5-1, Doe Aff., 2. Additionally, Alame acknowledged Doe's request to delete the explicit depictions and even told Doe he deleted them. Therefore, Doe has provided a sufficient basis to show Alame was aware the explicit depictions were private in nature and not meant to be shared with others.

In sum, after considering the evidence in addition to the allegations in Doe's complaint, the Court finds sufficient basis to enter the requested default judgment on the VAWRA claim.

2.  The UDIVM Claim

Under this statute, a defendant is liable "to a person depicted in intimate visual material for damages arising from the disclosure of the material if" the plaintiff can establish the following four elements:

> (1) the defendant discloses the intimate visual material without the effective consent of the depicted person and with the intent to harm that person;
> (2) at the time of the disclosure, the defendant knows or has reason to believe that the intimate visual material was obtained by the defendant or created under circumstances in which the depicted person had a reasonable expectation that the material would remain private;
> (3) the disclosure of the intimate visual material causes harm to the depicted person; and
> (4) the disclosure of the intimate visual material reveals the identity of the depicted person in any manner, including through:
>> (A) any accompanying or subsequent information or material related to the intimate visual material; or
>> (B) information or material provided by a third party in response to the disclosure of the intimate visual material.

Tex. Civ. Prac. & Rem. Code § 98B.002(a). The first element requires Doe to sufficiently allege

Alame disclosed the explicit depictions with the intent to harm her. *See id.*, subsec. (a)(1). After reviewing the record, the Court finds there are not sufficient allegations in the complaint or evidence in the record to satisfy the intent requirement in the first element, which means default judgment cannot be entered on the UDIVM claim.

Under Texas law, "[a]ctions taken with the specific intent to inflict harm are characterized as intentional torts." *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 99 (Tex. 2012) (citation omitted). "With regard to intentional torts, the Texas Supreme Court has made clear that the distinguishing feature of an intentional tort is 'the specific intent to inflict injury.'" *Vasquez v. Six Flags Hou., Inc.*, 120 S.W.3d 445, 448 (Tex. App.—Texarkana 2003, no pet.) (quoting *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985)). "The Restatement Second of Torts defines intent to mean that 'the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Reed Tool Co.*, 689 S.W.2d at 406 (quoting Restatement (Second) of Torts § 8A (1965)).

Doe points the Court to paragraphs 12-15, 39, and 40 of her complaint to show she sufficiently alleged Alame acted with the intent to harm her when he disclosed the explicit depictions. Doc. 28, Mot. Default J., 7. But those paragraphs discuss only Doe's non-consent and assert conclusory allegations that Alame acted with the intent to harm Doe.

Contrast the allegations here with the facts in *Bilal v. Khan*, where the plaintiff asserted a UDIVM claim after the defendant "collected pornographic images and videos from her cell phone without her knowledge or consent and sent them to her mother." No. 05-24-00390-CV, 2025 WL 1547741, at *1 (Tex. App.—Dallas May 30, 2025, no pet.). "When [the defendant] sent the videos to [the plaintiff's mother], he asked her to tell [the plaintiff] to marry him and threatened to send the

videos to more people if [the plaintiff] refused to do so." *Id.* The plaintiff additionally testified that she and her family are Pakistani Muslims, and it is "'extremely negative' for a woman to have sex outside of marriage" in her community. *Id.*

On the facts of *Bilal*, a fact finder could infer the defendant acted with the intent to harm the plaintiff because of the defendant's blackmail threat. *See Olavarria v. State*, No. 05-94-01092-CR, 1995 WL 376787, at *4 (Tex. App. June 5, 1995) ("Intent can be inferred from acts, words, and conduct.") (citation omitted). In contrast, here, Doe includes no allegation in her complaint regarding why Alame disclosed the explicit depictions, only that he did it without her consent and, in some instances, after he told her he would delete the explicit depictions. Those allegations, without more, are insufficient to permit the Court to infer Alame disclosed the explicit depictions with the intent to harm Doe. Thus, the Court finds there is not a sufficient basis in the complaint for entry of default judgment on Doe's UDIVM claim.

### 3. The Invasion of Privacy Claim

"Invasion of privacy is [a] widely recognized . . . common law tort." *Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 873 (W.D. Tex. 2016). "Texas recognizes three separate types of invasion of privacy: (1) intrusion upon seclusion or solitude or into one's private affairs; (2) public disclosure of embarrassing private facts; and (3) wrongful appropriation of one's name or likeness." *Doggett v. Travis Law Firm, P.C.*, 01-17-00098-CV, 2018 WL 2141412, at *3 (Tex. App.— Houston [1st Dist.] May 10, 2018, pet. denied) (citing *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994)). Here, Doe moves for default on an intrusion upon seclusion claim. Doc. 1, Compl., 9; Doc. 28, Mot. Default J., 14.

For an intrusion upon seclusion claim, a plaintiff must show "(1) an intentional intrusion,

physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns; (2) which would be highly offensive to a reasonable person; and (3) that caused injury." *Rogers v. City of Hou.*, 627 S.W.3d 777, 792 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993)) (other citations omitted). "The intrusion tort typically involves some sort of *physical* invasion of a person's property and is thus conceptually a quasi-trespass tort." *Doe v. United States*, 83 F. Supp. 2d 833, 840 (S.D. Tex. 2000) (emphasis in original). Texas Courts "have consistently held that an intrusion upon seclusion claim fails without evidence of a physical intrusion or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying." *Morales v. Barnes*, No. 05-17-00316-CV, 2017 WL 6759190, at *5 (Tex. App.—Dallas Dec. 29, 2017, no pet.) (collecting cases).

Applying the elements to this case, the Court finds there is not a sufficient basis in the complaint for entry of default judgment on Doe's intrusion on seclusion claim. Doe does not allege any facts supporting a finding of physical intrusion. Indeed, Doe admits Alame created the recordings of her with her knowledge and consent. Therefore, these facts do not support the "quasi-trespass" nature of an intrusion on seclusion claim.

C.  *Forms of Relief*

Doe seeks (1) a permanent injunction, (2) liquidated statutory damages in the amount of $150,000 per violation of the VAWRA, (3) exemplary damages authorized by the UDIVM; (4) attorney's fees, (5) costs, (6) pre-judgment interest, and (7) post-judgment interest. Doc. 28, Mot. Default J., 15-27. The Court must now determine whether Doe's motion, along with its attached supporting documentation, is sufficient to allow the Court to award her relief.

<u>1.</u>     <u>Permanent Injunction</u>

Under the VAWRA, a court can order "equitable relief, including . . . a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction." § 6851(b)(3)(ii). A permanent injunction is appropriate when a plaintiff can establish "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626-27 (5th Cir. 2013) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "Courts have acknowledged that default against a defendant is tantamount to actual success on the merits." *Chevron Intell. Prop., L.L.C. v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *3 (N.D. Tex. Aug. 24, 2009) (O'Connor, J.) (citation omitted).

Here, Doe's request for a permanent injunction is valid. First, dissemination of one's sexually explicit images causes irreparable harm. See *Serpa*, 2025 WL 332555, at *3 (citations omitted); *see Doe v. Unknown Party*, No. CV-24-00252-PHX-DLR, 2024 WL 492231, at *3 (D. Ariz. Feb. 7, 2024) ("The harms Plaintiffs allege from these disclosures [of their intimate visual depictions]—such as emotional distress—are the type of harms that lack an adequate legal remedy."); *Doe v. Constant*, No. 24-554, 2024 WL 3512136, at *3 (W.D. La. July 23, 2024) (finding a plaintiff "demonstrated an immediate risk of irreparable harm in the absence of injunctive relief" because defendant's behavior "pose[d] an imminent risk of dissemination of Plaintiff's intimate visual depictions"). Doe has suffered significant harm from Alame's prior disclosures, including severe emotional distress. Second, monetary relief is an inadequate remedy because Alame's phone was returned to him by the

police, making it is possible for Alame to continue to disseminate the explicit depictions absent a permanent injunction. Because the dissemination of Doe's sexually explicit images constitutes irreparable harm, and the Court finds that Alame could disseminate these images again, the first two elements are met. Third, requiring Alame to refrain from future unlawful disseminations of Doe's intimate materials will cause him minimal to no harm, and any potential harm caused by requiring him to comply with the law is insignificant compared to the continuing harm to Doe. Fourth, the public interest is not undermined by restraining Alame from disseminating sexually explicit images of Doe without her consent. As stated previously, this Court cannot conceive of any public interest in allowing Alame to continue disseminating these images. *See* Doc. 10, Mem. Op. & Order, 7.

Therefore, a permanent injunction ordering Alame to cease disclosure of the visual depictions at issue is a proper remedy upon the entry of default judgment.

2. Damages

Doe asks for statutory damages totaling $750,000 and exemplary damages totaling $750,000. Doc. 28, Mot. Default J., 10-11. Under the VAWRA, "an individual may recover the actual damages sustained by the individual or liquidated damages in the amount of $150,000[.]" § 6851(b)(1). Here, Doe seeks the $150,000 in liquidated damages per disclosure of the explicit depictions. Doc. 28, Mot. Default J., 10.

As discussed above, considering the evidence provided by Doe in addition to the allegations in her complaint, there are sufficient grounds for entry of default judgment on the VAWRA claim for the five disclosures. Therefore, the Court awards Doe statutory damages in the amount of $150,000 per disclosure, totaling $750,000.

Exemplary damages are authorized under Texas law for UDIVM claims and intrusion upon seclusion claims but are not provided under the VAWRA. Because Doe has not prevailed on her UDIVM claim or intrusion upon seclusion claim, the Court declines to award exemplary damages at this time.

### 3. Attorney's Fees

Doe next asks for $28,965.60 in attorney's fees. Doc. 28, Mot. Default J., 17. Here, the VAWRA provides for attorney's fees for Doe as a prevailing party. *See* § 6851(b)(3)(a)(i).

The Fifth Circuit uses a two-step process for determining attorney's fees. *Paisano Cap. SA de CV v. 23 Tex. Produce, Inc.*, No. 3:19-CV-0852-B, 2019 WL 3239152, at *6 (N.D. Tex. July 18, 2019) (Boyle J.) (quoting *Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (per curiam)). First, a court calculates the "lodestar" by "multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003) (citation omitted). "The court should exclude all time that is excessive, duplicative, or inadequately documented." *Smith*, 478 F. App'x at 124 (citation omitted). Second, a court can adjust the lodestar amount based on twelve factors set by the Fifth Circuit. *Id.* (citation omitted). Those factors are:

> (1) time and labor required; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989)). Accordingly, the Court will look to the

presented evidence, apply the lodestar method, and make adjustments, if necessary, with respect to the *Johnson* factors.

The first step in the lodestar analysis requires the Court to determine the reasonable number of hours expended by Doe's attorney on the suit, as well as his reasonable hourly rate. *Id.* (citation omitted). The party requesting fees has the burden of establishing a reasonable hourly rate. *Kryptek Outdoor Grp., LLC v. Salt Armour, Inc.*, No. 1:15-cv-348, 2016 WL 7757267, at *5 (E.D. Tex. Mar. 28, 2016) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)) (other citation omitted), *vacated on unrelated grounds*, No. 1:15-cv-348, 2017 WL 11767678 (E.D. Tex. Nov. 29, 2017). "The reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" BMO *Harris Bank, N.A. v. RidgeAire, Inc.*, No. 6:12-cv-550, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (quoting *Blum*, 465 U.S. at 896 & n.11.).

Here, Doe's attorney, Mr. Hutcherson, provided a declaration, the retainer agreement, invoices, and a timekeeping report detailing the amount of time spent and work performed in the case. Doc. 30, Hutcherson Decl., 2-28. Mr. Hutcherson performed 59.6 hours of work at a rate of $600 per hour. Doc. 30, Hutcherson Decl., 6-7. Mr. Hutcherson states he applied a 10% reduction to his hours total for potential inefficiencies, reducing the total hours worked to 53.64. *Id.* Mr. Hutcherson segregates his time between the three claims as 90% devoted to the statutory claims and 10% devoted to the common law invasion of privacy claim. *Id.* To account for the fact that the common law claim does not provide for attorney's fees, Mr. Hutcherson asserts 90% of the total hours worked is recoverable attorney's fees. *Id.*

Because Doe prevailed only on her VAWRA claim, only the time Mr. Hutcherson spent on that claim is recoverable. The Court therefore reduces the 90% of the total hours worked by 50%.

Therefore, the lodestar amount for total hours worked is (0.5 x (53.64 x 0.9)), which results in 24.138 compensable hours.

After reviewing Mr. Hutcherson's declaration as well as the supporting time report, the Court finds that the time expended by Mr. Hutcherson was reasonable. Nothing indicates that any individual was billing for "excessive, duplicative, or inadequately documented" time. *See Smith*, 478 F. App'x at 124. Consequently, the Court accepts these hours as part of its lodestar calculation.

With respect to the hourly rates, Mr. Hutcherson states $600 is "reasonable and customary in the Dallas legal market for attorneys with [his] level of experience and specialized expertise in privacy and internet related litigation." Doc. 30, Hutcherson Decl., 6. Mr. Hutcherson has practiced for over twenty years, and filed his first revenge porn case over ten years ago. *Id.* at 3.

The Court finds Mr. Hutcherson's hourly rate reasonable. *See Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, at *2 & n.5 (N.D. Tex. Apr. 24, 2014) (Fitzwater, C. J.) (noting that courts are experts on the reasonableness of attorneys' fees) (citation omitted). Recent attorneys' fees awards in the Northern District of Texas show Mr. Hutcherson's rate is reasonable for attorneys of his skill and experience in the Dallas market. *See Michaels Stores Procurement Co. v. DMR Constr., Inc.*, No. 3:18-CV-1436-B, 2019 WL 399074, at *2 (N.D. Tex. Jan. 31, 2019) (Boyle, J.) (finding hourly rates from $575 to $675 reasonable); *Salt & Light Energy Equip., LLC v. Origin Bancorp, Inc.*, No. 3:22-CV-00654-N, 2025 WL 2322790, at *4 (N.D. Tex. Aug. 12, 2025) (Godbey, J.) ("Recent Northern District of Texas decisions indicate that the prevailing market rate in commercial litigation cases is around $300–$700 per hour for attorneys, increasing based on level of experience.") (collecting cases). Thus, considering the declaration and other exhibits, as well as the Court's own knowledge of rates charged for legal services by attorneys in the area with similar

levels of skill, experience, and competence, the Court will apply Mr. Hutcherson's proffered hourly rate.

Accordingly, the Court finds the lodestar amount is the result of multiplying ($600/hour x 21.138 hours), which is $14,482.80. Considering the twelve *Johnson* factors described above, the Court does not find it necessary to make any adjustment to these figures. Doe is awarded $14,482.80 in attorney's fees.

4.   Costs

A prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. *See* FED. R. CIV. P. 54(d)(1). In relevant part, taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of a transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case. *See* 28 U.S.C. § 1920(1)-(4).

Doe seeks $3,115.89 in costs, namely the filing fee ($405.00), PACER expenses ($3.20), process server fees ($1,000.78), private investigation fees ($150.00), and LexisNexis legal research expenses ($1,556.91). Doc. 28, Mot. Default J., 18-19; *see* Doc. 30, Invoices, 24-27. But private process-server fees, private investigation fees, and legal research expenses are not typically recoverable costs in this circuit. *See Flying R Aviation, LLC v. Bondio*, LLC, No. 3:22-CV-1341-B, 2023 WL 4826217, at *7-8 (N.D. Tex. July 26, 2023) (Boyle, J.) (finding that private process server fees and online legal research expenses are not recoverable costs) (citation omitted); *Crown Distrib. LLC v. Ice Suppz, LLC*, No. 3:21-CV-1052-B, 2022 WL 1524119, at *7 (N.D. Tex. May 13, 2022) (Boyle, J.) (finding that "private investigator fees are not recoverable costs"). Therefore, the Court awards Doe costs in the amount of $408.20, which is attributable only to the filing fee and PACER expenses.

5.   Pre-judgment Interest

A prevailing plaintiff's request for an equitable award of pre-judgment interest should be granted "in all but exceptional circumstances." *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996) (quoting *Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 541 (5th Cir. 1987) (applying Texas law)). Because Doe prevailed on a federal law claim that is silent on the issue of pre-judgment interest, the Court looks to Texas Law to guide its determination of the interest rate. *See Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 984 (5th Cir. 1991) (holding that where a claim is governed by a federal statute that is silent on the issue of pre-judgment interest, state law guides the court's discretion in determining the interest rate) (citing *United States ex rel. Canion v. Randall & Blake*, 817 F.2d 1188, 1193 (5th Cir. 1987)), *abrogated on other grounds by*, CIGNA Corp. v. *Amara*, 563 U.S. 421 (2011).

"When, as here, there is no statute specifying the rate of prejudgment interest, 'Texas allows for the award of prejudgment interest under "general principles of equity" and follows the principles currently set out in [Texas Finance Code § 304].'" *Wesley v. Yellow Transp., Inc.*, No. 3:05-CV-2266-D, 2010 WL 3606095, at *1 (N.D. Tex. Sept. 16, 2010) (Fitzwater, C.J.) (citation omitted). Accordingly, the Court looks to the prime rate published by "the Board of Governors of the Federal Reserve System on the date of computation" to determine the pre-judgment interest rate. Tex. Fin. Code § 304.003(c)(1). "Prejudgment interest will only accrue as to actual damages awarded and not on any attorney's fees awarded." *Halff Assocs., Inc. v. Warner Pac. Props.*, LLC, No. 3-08-CV-0574-B, 2008 WL 3874673, at *2 (N.D. Tex. Aug. 13, 2008) (Boye, J.).

The current prime rate is 6.75%.[2] Pre-judgment interest starts accruing on the earlier of: (1) 180 days after the date the defendant received written notice of a claim; or (2) the date suit is filed. *See* Tex. Fin. Code Ann. § 304.104. The pre-judgment interest period ends on the date preceding the day on which judgment is rendered. *Id.* Here, Doe is awarded pre-judgment interest at the rate of 6.75%, computed as simple interest, from February 10, 2025, to the date preceding final judgment as to actual damages awarded, and not attorney fees.

6. Post-judgment Interest

The Court next turns to post-judgment interest. Regardless of whether a cause of action is based on state law or federal law, federal law determines post-judgment interest. *See Boston Old Colony Ins. Co. v. Tiner Assocs., Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) (noting that federal post-judgment interest applies even in diversity cases). The federal post-judgment interest rate ("federal rate") is governed by 28 U.S.C. § 1961(a), which sets the rate at the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of judgment. Post-judgment interest is available "on the entire amount of the final judgment, including damages, prejudgment interest, and attorney's fees." *See Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991). Post-judgment interest accuses from the date of judgment. *See* § 1961(a).

The federal rate is 3.53%.[3] Therefore, the Court awards post-judgment interest on the final judgment award, including attorney's fees, costs, and pre-judgment interest, at the rate of 3.53%, calculated from the date of the entry of judgment on January 21, 2026.[4]

---

[2] Board of Governors of the Federal Reserve System (US), Bank Prime Loan Rate [DPRIME], retrieved from FRED, Federal Reserve Bank of St. Louis at https://fred.stlouisfed.org/series/DPRIME (Jan. 21, 2026).

[3] The applicable post-judgment interest rate is found at https://fred.stlouisfed.org/series/WGS1YR (Jan. 21, 2026).

[4] "Post judgment-interest shall be computed daily to the date of payment . . . and shall be compounded annually." 28 U.S.C. § 1961(b).

## IV.

## CONCLUSION

Accordingly, the Court **GRANTS in Part and DENIES in Part** Doe's Motion for Default Judgment. The Court will enter a separate judgment.

**SO ORDERED.**

**SIGNED: January 21, 2026.**

                                                  JANE J. BOYLE
                                     SENIOR UNITED STATES DISTRICT JUDGE